IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | |
|---|---|
| BOBBY GRESHAM,<br><br>               Plaintiff,<br><br>vs.<br><br>MIDLAND PAINT & BODY SHOP,<br>INC., CLAUTHON D. GIACOBONE,<br>and CHUCK COMPTON,<br><br>               Defendants.<br>_____ | ) Civil Action No. 1:06-3069-RBH-JRM<br>)<br>)<br>)<br>)<br>)<br>)<br>) **REPORT AND RECOMMENDATION**<br>)<br>)<br>)<br>) |

       Plaintiff, Bobby Gresham ("Gresham"), filed this action pro se against his former employer, Midland Paint & Body Shop, Inc. ("Midland") and its owner, Clauthon D. "Jack" Giacobone ("Giacobone") on October 27, 2006. Defendants filed a "Motion to Dismiss or In the Alternative for Summary Judgment" on February 13, 2007, and an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued. On April 20, 2007, Gresham filed a pro se amended complaint. Counsel appeared for Gresham, and the Motion to Dismiss, or In the Alterative for Summary Judgment was withdrawn.

       The amended complaint added an additional defendant, Chuck Compton ("Compton"), who was alleged to be the "assistant manager" of Midland. (Amended Complaint, ¶ 5). This amended complaint, apparently drafted by counsel, states four specific claims based on race pursuant to 42 U.S.C. § 1981: (1) discrimination in pay; (2) termination; (3) retaliation; and (4) harassment. A consent scheduling order was issued on June 7, 2007, with a discovery deadline of November 2, 2007.

Gresham filed a motion for protective order on October 24, 2007, and a motion to extend discovery on November 2, 2007. A review of the motions and defendants' responses showed that discovery had not gone smoothly, and counsel had experienced problems with cooperation and communication. A hearing was held on November 15, 2007, and the next day an order was issued.

Plaintiff and his counsel failed to appear for plaintiff's properly noticed deposition on October 24, 2007. The motion for protective order was filed on that day, but after the time for commencing the deposition. Plaintiff argued that he was justified in not attending his deposition because he had not received certain responses to written discovery. This argument was rejected, the motion for protective order was denied, and discovery was extended until December 21, 2007, for the sole purpose of deposing plaintiff. The question of whether or not plaintiff should be sanctioned was left open (see Order of November 16, 2007).

"Defendants' Joint Motion for Summary Judgment" was filed on January 25, 2008. Additionally, defendants filed a "Joint Motion to Dismiss for Failure to Prosecute and Motion for Sanctions" on January 25, 2008. Plaintiff filed a "Memorandum of Law in Opposition to Defendants' Motion to Dismiss and for Sanctions" on February 12, 2008. Defendants filed a reply on February 26, 2008. Last, defendants filed a motion to strike plaintiff's declaration which was submitted in support of his memorandum in opposition to summary judgment. Plaintiff filed an opposition memorandum to the motion to strike on March 14, 2008.

1. Sanctions

Defendants have moved pursuant to Fed. R. Civ. P. 37 and 41 to dismiss the complaint and sanctions against plaintiff and his counsel. Their motion traces the discovery process in this case as noted above. Specifically, defendants state that plaintiff and counsel: (1)

did not initiate any discovery until late in the discovery period; (2) filed an unsupported motion for protective order which was used in bad faith as an excuse for plaintiff not to appear at his properly noticed deposition; (3) failed to appear at the deposition of plaintiff's wife; (4) appeared before the undersigned at the hearing on November 15, 2007, without local counsel as required by Local Civil Rule 83.I.06, D.S.C.; (5) failed to discuss mediation; and (6) failed to appear at plaintiff's rescheduled deposition on December 19, 2007.

Defendants have moved for sanctions pursuant to Rule 37(d) and 37(b)(2)(c)[1] based primarily on plaintiff's failure to attend his two depositions. Under Rule 37(d)(3) sanctions may include those listed in Rule 37(b)(2)(A)(i)-(vi), i.e., designating certain matters to be established as fact; prohibiting the offending party from supporting or contesting claims or from using certain evidence; striking pleadings; staying proceeding to accomplish compliance; dismissing the action; imposing default judgment; or finding contempt for failing to obey a court's order. Additionally, Rule 37(d)(3) allows imposition of monetary sanctions for expenses and attorney's fees. Rule 37(d) does not require there to be a violation of a court order for sanctions to be imposed. Courts should determine whether the non-complying party acted in bad faith, the amount of prejudice, the need for deterrence, and the effectiveness of less drastic sanctions in imposing Rule 37 sanctions. Mutual Federal Sav. & Loan Ass'n v. Richards & Associates, Inc., 872 F.2d 88, 92 (4th Cir. 1989).[2]

---

[1] Rule 37(b)(2)(c) provides for imposition of sanctions where a party failed to obey an order of the Court relating to discovery. The undersigned concludes that this rule is inapplicable under the facts of this case.

[2] Defendants have filed a separate motion pursuant to Rule 37(d) to strike the declaration of plaintiff filed in opposition to their motion for summary judgment.

Similar considerations apply to a motion to involuntarily dismiss an action pursuant to Rule 41(b) for failure to prosecute. In considering such a motion, a court should consider "(1) the length of inactivity, (2) the issuance of warnings by the court, (3) the nature and amount of disregard shown to Federal rules, local rules, and/or court orders, and (4) the nature and qualities of excuses, etc. While prejudice to the opposing party is often a consideration to be taken into account before dismissing an action, it is not a prerequisite for dismissal pursuant to Rule 41(b)." Mitchell v. Housing Authority of the City of Winston-Salem, 2006 WL 889552, *2 (M.D.N.C. 2006) citing 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2370 at 381, (1995).

The motion of plaintiff's counsel to appear pro hac vice was granted on May 2, 2007, and a consent scheduling order was issued on June 7, 2007. That order appears to be the end of cooperation between the parties. By that order, discovery was scheduled to end on November 2, 2007. The parties complain of each other's lack of responsiveness during the discovery period, but no discovery motions were filed until October 24, 2007, as discovery was drawing to a close and plaintiff was required to appear for his deposition, but failed to do so. As discussed above, plaintiff filed a motion for protective order with no support in law. On November 2, 2007, plaintiff filed a motion to extend discovery. After a hearing on the matter, the undersigned denied the motion for protective order as moot, denied plaintiff's motion to extend discovery, extended the discovery period until December 21, 2007, for the sole purpose of deposing plaintiff, reset the deadline for dispositive motions, and granted leave to defendants to seek sanctions for plaintiff's failure to appear for deposition.

The above order did not specify a time and place for plaintiff's deposition. Instead, the parties were to notice the deposition pursuant to the Federal Rules of Civil Procedure. When

4

plaintiff and counsel did not appear, defendants made a record of the proceeding, the transcript of which is attached to their motion. A copy of the notice was marked as an exhibit[3] and counsel unsuccessfully attempted to contact plaintiff's counsel. Defendants have presented a copy of counsel's mail log which shows that the notice of deposition was mailed on November 21, 2007. Later in the day, counsel for plaintiff and defendant spoke by telephone. A letter memorializing the conversation states that plaintiff's counsel told defendants' counsel that the notice was not received. Plaintiff's offer to be deposed on December 21, 2007 was rejected. Plaintiff's counsel has submitted an affidavit that the deposition was not received.

The undersigned concludes that the motion for protective order discussed above was filed in bad faith. One could easily believe that plaintiff's counsel's reluctance to submit to deposition carried over to the rescheduled deposition. However on this record, a question of fact exists concerning receipt of the notice.

While plaintiff's counsel has not been diligent in this case, she has not been inactive. She was admitted pro hac vice on May 2, 2007 and consented to a new scheduling order. Counsel deposed Robert Love on September 25, 2007. She filed the improper motion for protective order on October 24, 2007 and a motion for extension of time on November 2, 2007. Counsel has responded to the pending motions. Counsel did disregard the rules by appearing without local counsel at the hearing on November 15, 2007. However, no warnings have been issued by the court.

Given this record, the undersigned concludes that monetary sanctions against plaintiff and his counsel should be imposed with respect to plaintiff's first deposition.

---

[3] A copy of the notice is not included in the record before the court.

2.    Summary Judgment

Defendants have filed a joint motion for summary judgment. As noted above, discovery in this case is limited. Defendants' joint motion for summary judgment is supported by excerpts of the deposition testimony of Robert Love ("Love Dep., ___"), the affidavit of Compton ("Compton Aff., ___"), the affidavit of Giacobone ("Giacobone Aff., ___") and a portion of the deposition of plaintiff's wife, Olga Gresham ("Gresham Dep., ___"). Plaintiff has presented his own declaration ("Pl. Aff., ___") as well as the declaration of Irving James Walker ("Walker Aff., ___").[4]

Plaintiff alleges that he was subjected to a racially hostile work environment and that he was terminated because he complained of the harassment and due to this race[5] in violation of § 1981.

A.    Termination

Plaintiff alleges that he was discharged due to his race in violation of 42 U.S.C. § 2000e-2(a). That statute provides:

> It shall be an unlawful employment practice for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . .

---

[4] Defendants argue that plaintiff's declarations should not be considered because they are unwitnessed and not originals. However, they appear to be sufficient under 28 U.S.C. § 1746.

[5] There is nothing in the record to support a claim that Gresham received disparate pay based on his race, and the claim is not discussed by the parties. It is, therefore, recommended that summary judgment be granted as to this claim.

6

This is a disparate treatment case and plaintiff must prove that "but for" his race, he would not have been terminated. Holmes v. Bevilacqua, 794 F.2d 142 (4th Cir. 1986). Plaintiff can prove defendant's motive to discriminate by two methods. First, the "plaintiff may meet this burden under the ordinary standards of proof by direct and indirect evidence relevant to and sufficiently probative of the issue. In the alternative, a plaintiff may resort to the judicially created scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981)." EEOC v. Clay Printing Company, 955 F.2d 936 (4th Cir. 1992).

To overcome a motion for summary judgment, under the ordinary standards of proof, plaintiff is required to "produce direct evidence of a stated purpose to discriminate (on the basis of race) and/or circumstantial evidence of a stated purpose to discriminate (on the basis of race) of sufficient probative force to reflect a genuine issue of material fact." Goldberg v. B. Green and Co., Inc., 836 F.2d 845 (4th Cir. 1988). In the absence of direct or indirect proof plaintiff can employ the McDonnell Douglas scheme to establish a prima facie case of discrimination by offering proof that:

(1) he is a member of a protected class;

(2) he was discharged;

(3) he was satisfactorily performing his duties at the time of his discharge; and

(4) after his discharge he was replaced by someone outside the protected class.

EEOC v. Clay Printing Co., at 941.

Due to the endless variety of factual patterns, it is recognized that the criteria required to establish a prima facie case of discrimination should be flexible. Thus, a discharged employee may alternatively establish a prima facie case of discrimination by showing:

   (1)  he is a member of a protected class;

   (2)  he was qualified for his job and his job performance was satisfactory;

   (3)  he was discharged; and

   (4)  other employees outside the protected class were retained under similar circumstances.

Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), *cert. denied*, 516 U.S. 870 (1995).

If a plaintiff establishes a prima facie case, a rebuttable presumption is created that the discharge was due to unlawful discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 504 (1993). The defendant must then come forward with a legitimate, non-discriminatory explanation for its action. When the defendant does so, the presumption of discrimination evaporates, and plaintiff must prove that the defendants' proffered reason is pretextual and that the discharge was due to unlawful discrimination. Id.

Gresham has not established a prima facie case that he was terminated due to his race under either of the alternatives discussed above. There is nothing in the record to establish that Gresham was replaced by someone outside the protected class or that other employees outside the protected class were retained under similar circumstances.

   B.  Hostile Work Environment

   Gresham alleges that he was subjected to a racially hostile work environment while employed by Midland. He alleges that white employees frequently used the "N-word" when referring to or talking to him and other African-American employees. Further, he asserts that on or about July 26, 2005, Compton showed him a newspaper article concerning a reenactment of a lynching which occurred in 1946. Photographs that appear with handwritten notations of names, i.e., the two African-Americans with nooses around their necks were shown

8

as Gresham and Love and the KKK reenactors were identified as Giacobone and Compton. The article with photographs was posted in Gresham's work area. Last, Gresham complains that the bathroom in the paint shop[6] was out of order, and defendants would not allow him or the other African Americans who worked in the paint shop to use the bathroom in the body shop, forcing them to use the woods adjacent to the body shop.

To prevail on this claim, Gresham must show that the harassment was: (1) unwelcome, (2) based on his race, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) there is some basis for imposing liability on the employer. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183-84 (4th Cir. 2001). In Faragher v. City of Boca Raton, 524 U.S. 775 (1988), the Supreme Court reaffirmed its previously articulated standard that a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact perceives to be so." Id. at 787 (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993). Among the circumstances examined are "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 21.

The affidavits of Gresham and Walker are sufficient to establish that a racially hostile work environment existed at Midland. In the light most favorable to Gresham, Compton's use of the N-word in a derisive way on a daily basis. (Gresham Aff., ¶ 10-11; Walker Aff., ¶ 1-2).

---

[6]Gresham worked in the paint shop. It was separate from the body shop.

9

Further, Gresham and other African-American employees were not allowed to use a functioning bathroom. (Gresham Aff., ¶ 22; Walker Aff., ¶ 3).

Compton does not deny showing the news article depicting the reenactment of a lynching to Gresham. However, Compton states that it "was a joke and not intended to harass or discriminate against any person." (Compton Aff., ¶ 7). A copy of the article is attached to Gresham's affidavit. It is offensive under any standard. (Gresham Aff., ¶ 14). Gresham complained of the incident to Giacobone. (Id.).[7]

        C.     Retaliation

Gresham asserts that he was terminated because he complained to Giacobone about the racially hostile work environment. To establish a prima facie case of retaliation, it must be demonstrated that:

    (1)    the employee engaged in protected activity;

    (2)    the employer took some adverse employment action against the employee; and

    (3)    a causal connection existed between the protected activity and the adverse action.

See Anderson v. G.D.C., Inc., 281 F.3d 452, 458 (4th Cir. 2002); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998); Carter v. Ball, 33 F.3d at 460. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-retaliatory reason for the adverse action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 254. If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered

---

[7]Defendants assert that Compton was not an employee of Midland, had no supervisory authority over Gresham, and had nothing to do with Gresham's termination. (Compton Aff., ¶ 2-5; Giacobone Aff. ¶ 4). However, defendants do not suggest that Compton was not at the business on a daily basis and was a part of the work environment.

reason was pretextual, and that the adverse action was imposed because the plaintiff engaged in protected activity. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).

A plaintiff need not have filed a formal complaint with the EEO to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints are included within the definition of protected activity. Warren v. Halstead Industries, Inc., 802 F.2d 746, cert. denied, 487 U.S. 1218 (1988) and Mitchell v. Baldrige, 759 F.2d 80 (D.C. Cir. 1985).

Gresham asserts that he complained about the July 26, 2005 incident to Giacobone and that Giacobone responded that "Chuck was just making a joke." (Gresham Aff., ¶ 14). On the other hand, Giacobone denies that Gresham made a complaint. (Giacobone Aff., ¶ 7). In the light most favorable to Gresham, he has established that he engaged in protected activity by reporting the incident to Giacobone. Further, it is undisputed that Gresham suffered an adverse employment action when he was terminated.

However, Gresham has not established causation. He states that no reason was given for his termination. (Gresham Aff., ¶ 16). Giacobone states that he terminated Gresham for poor performance. (Giacobone Aff., ¶ 5). However, Gresham was terminated on April 7, 2006, over eight months after he complained about the article to Giacobone. See Pascual v. Lowe's Home Centers, Inc., 193 Fed. Appx. 229, 232 (4th Cir. 2006) (unpublished) (three to four months between the termination and protected activities too long to establish causal connection by temporal proximity alone); Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C. 1992) (passage of nearly a year precluded an inference of causal connection); Parrott v. Cheney, 748 F.Supp. 312 (D.Md. 1989) (passage of as little as five months between protected activity and adverse action

enough to negate causal connection), aff'd per curiam, 914 F.2d 248 (4th Cir. 1990).  There is no evidence of "continuing retaliatory conduct and animus" between Gresham's complaint to Giacobone and the termination.  Lattieri v. Equant, Inc., 478 F.3d 640, 650 (4th Cir. 2007).

## Conclusion

Based on a review of the record, it is recommended that:

1. Defendants' Joint Motion to Dismiss for Failure to Prosecute and Motion for Sanctions be granted with respect to imposing monetary sanctions on plaintiff and his counsel in connection with his failure to appear at his first deposition and denied in all other respects;

2. Defendants' Joint Motion to Strike Declaration of Plaintiff be denied;

3. Defendants' Joint Motion for Summary Judgment be denied as to plaintiff's claim of a racially hostile work environment and be granted in all other respects.

                          Respectfully submitted,

                          s/Joseph R. McCrorey
                          United States Magistrate Judge

August 28, 2008
Columbia, South Carolina